[Cite as *Levy v. Huener*, 2018-Ohio-119.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


Royanne Levy                                     Court of Appeals No. L-17-1081

       Appellant                             Trial Court No. CI0201602063

v.

Jean Ann Huener, et al.                          **DECISION AND JUDGMENT**

       Appellees                             Decided:  January 12, 2018

* * * * *

Zachary J. Murry, for appellant.

J. Mark Trimble, Tracy B. Selis, and Stephen E. House, for appellees.

* * * * *

**JENSEN, J.**

**{¶ 1}** Appellant, Royanne Levy, appeals the March 20, 2017 judgment of the

Lucas County Court of Common Pleas granting summary judgment to appellees, Jean

Huener, Kay Huener, and Beth Huener.  Because we find that the trial court properly

granted summary judgment on Levy's common law negligence claim, but a genuine issue

of material fact remains for trial on the issue of proximate cause, we affirm, in part, and reverse, in part.

## I. Background and Facts

{¶ 2} This case arose from a slip and fall accident on the Huener sisters' property. On October 31, 2016, Levy was walking over a creek bridge[1] installed at the rear of the Hueners' home when she fell and sustained serious injuries.

{¶ 3} At the time of the accident, Levy was temporarily renting a room in the Hueners' home. Although the parties did not have a written lease agreement, Levy and the Hueners orally agreed that Levy would pay $550 per month in rent, part of which was for food costs. Levy paid rent for approximately two months (half of September, all of October, and half of November) before moving to her own apartment.

{¶ 4} The Hueners' home is a single-family dwelling with three entrances: a front door, a side door, and a rear door. The parties mainly entered the house through the rear door, which is accessible by a set of steps and a ramp that lead to the driveway. The creek bridge is situated approximately halfway up the left side of the ramp; one end of the creek bridge is attached to the side of the ramp and the other is on the ground. The ground on either side of the creek bridge is landscaped, and there is a decorative concrete stone between the base of the creek bridge and the paved driveway. The creek bridge does not have any handrails, traction tape, or other safety features. Levy testified at her

---

[1] Levy refers to the creek bridge as a "narrower ramp" that is part of a "ramp system" at the back of the Hueners' home, while the Hueners refer to it as a "doggy bridge." The item is manufactured and marketed as a "creek bridge," which is the term that we will use.

2.

deposition that she was aware of the creek bridge, but had never used it. She recalled that no one ever told her she could or could not walk on the creek bridge. She said it was possible, however, that someone had mentioned that it was a doggy bridge, although she had never seen the dogs use it. She later testified that at least one of the sisters told her that the purpose of the creek bridge was to clean the dogs' paws.

{¶ 5} Immediately prior to Levy's fall, Levy and at least one of the Huener sisters were unloading items from the car. Someone was blocking the ramp, so Levy decided to cross the creek bridge to get to the back door. Although Levy had never walked on the creek bridge (or seen anyone else walk on the creek bridge), she testified at her deposition that she decided to cross it that day. Levy's hands were empty, but she had a plastic grocery bag with some small items in it on one of her wrists. After taking two or three steps, as she was reaching the apex of the creek bridge, Levy testified that she felt her feet slipping from under her. She said that she "reached out to grab something, but there's no railing there" to grab. She also testified that she knew she was "in trouble because there was nothing to hold onto" as she began falling. Levy fell backward and landed flat, fracturing her left elbow and her pelvis.

{¶ 6} Levy testified in her deposition that she did not know what caused her to fall. She did not see anything on the creek bridge that might have tripped her. She also said that a light rain was falling and the creek bridge was slightly wet, but it did not appear slippery. She claimed that one of the Huener sisters later told her that there was mud on the creek bridge, but Levy did not see any mud when she started walking up the creek bridge.

3.

{¶ 7} Levy filed the underlying complaint on March 25, 2016, seeking damages for her injuries based on R.C. Chapter 5321, Ohio's landlord-tenant law, and common law negligence. On November 4, 2016, the Hueners filed a motion for summary judgment. They argued that Levy and the Hueners did not have a landlord-tenant relationship, so the landlord-tenant laws were inapplicable. And, even if Levy were a tenant, the Hueners did not violate R.C. 5321.04. They also argued that Levy could not support her common law negligence claim because they did not violate any duties to Levy and Levy could not show that the creek bridge proximately caused her fall. Or, if they did violate a duty to Levy, the open and obvious doctrine barred her common law negligence claim.

{¶ 8} Levy filed a response and a cross motion for summary judgment on January 17, 2017. She argued that the landlord-tenant laws applied to her and that the Hueners violated their duties as landlords. She also claimed that the Hueners' negligence indisputably caused her injury. In support of her motion, Levy submitted the affidavit of her expert, Richard Hayes, who is trained in occupational health and safety. He opined that the creek bridge was part of a "ramp system" that provided ingress and egress to the Hueners' home and the creek bridge's placement in relation to the larger ramp invited people to use the creek bridge to access the house. He also claimed that the creek bridge violated several building codes, was unsafe, and was the proximate cause of Levy's injuries. Based on this, Levy sought partial summary judgment in her favor on the issue of the Hueners' liability.

4.

**{¶ 9}** On March 20, 2017, the trial court issued a judgment entry that granted the Hueners' motion, denied Levy's motion, and dismissed the case. The trial court determined that the Hueners were not liable in common law negligence because the creek bridge was an open and obvious danger and Levy assumed any risk of crossing it. The trial court found that the issue of Levy's tenancy status and the applicability of R.C. Chapter 5321 were irrelevant because she could not show that the creek bridge was the proximate cause of her fall. The court dismissed the case because any determination of proximate cause would be purely speculative.

**{¶ 10}** Levy appeals this decision, setting forth two assignments of error:

The Trial Court committed reversible error by entering summary judgment in favor of the Defendants-Appellees.

The Trial Court committed reversible error by denying Plaintiff's Cross-Motion for Partial Summary Judgment where the facts of the case and Plaintiff's undisputed expert testimony established that Defendants-Appellees, as Plaintiff's landlords, failed to maintain the premises in a fit and habitable condition and violated a specific, legislatively-enacted safety statute.

## II. Summary Judgment Standard

**{¶ 11}** An appellate court reviews summary judgment de novo, employing the same standard as the trial court. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The court can grant a motion for summary judgment only when the moving party demonstrates:

5.

(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and that (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C).

{¶ 12} The party seeking summary judgment must specifically delineate the basis upon which the motion is brought and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). The opposing party must do so using "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * *." Civ.R. 56(C). A "material" fact is one that would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 827, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

6.

## III. Law and Analysis

{¶ 13} Levy's assignments of error are interrelated, so we will consider them together. She objects to the trial court's determinations that (1) the Hueners did not owe her a common law duty because the creek bridge was an open and obvious danger and (2) Levy failed to demonstrate that any potential breach by the Hueners' of their duties as Levy's landlords was the proximate cause of her fall. We address each claim in turn.

## A. Common Law Negligence

{¶ 14} In her brief, Levy contends that the trial court erred by finding that the Hueners did not owe her a common law duty because any danger posed by the creek bridge was open and obvious because, she claims, the open and obvious doctrine does not apply when the parties have a landlord-tenant relationship. The Hueners counter that the open and obvious doctrine applies, which relieved them of any duty they might have owed to Levy.

{¶ 15} To prove a claim for negligence, "the plaintiff must show (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting from the breach." *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, ¶ 21, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).

{¶ 16} The existence of a duty is a matter of law for the court to determine. *Stoner v. Montpelier Tavern Co.*, 6th Dist. Williams No. WM-16-009, 2017-Ohio-7995, ¶ 20, citing *Krause v. Spartan Stores, Inc.*, 158 Ohio App.3d 304, 2004-Ohio-4365, 815 N.E.2d 696, ¶ 7 (6th Dist.). Under the common law, a landowner has a duty to invitees to

7.

exercise ordinary care and maintain the premises in a safe condition. *Bennett v. Stanley*, 92 Ohio St.3d 35, 38, 748 N.E.2d 41 (2001), citing *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68, 502 N.E.2d 611 (1986). This requires that the owner warn the invitee of any hidden or latent dangers the owner knows of or reasonably should know of and take reasonable precautions to protect the invitee from foreseeable dangers. *Noe v. Keller*, 6th Dist. Lucas No. L-12-1199, 2013-Ohio-2251, ¶ 33.

{¶ 17} If, however, a danger is open and obvious—that is, if the danger is so readily apparent that the invitee can reasonably be expected to discover it—the landowner owes no duty of care to the invitee. *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, syllabus, citing *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968). Although a landlord cannot use the open and obvious doctrine to defeat a statutory negligence per se claim brought under R.C. 5321.04, she can use it to defeat a common law negligence claim. *Mayhew v. Massey*, 7th Dist. Mahoning No. 16 MA 0049, 2017-Ohio-1016, ¶ 15, citing *Robinson* at ¶ 25.

{¶ 18} We agree with the trial court's assessment that any danger posed by the creek bridge was open and obvious and, accordingly, that the Hueners owed Levy no common law duty to warn her about the creek bridge. Levy testified that she was well aware of the creek bridge, knew that it was curved (as opposed to flat, like the ramp leading to the back door), and knew that no one in the household (with the possible exception of the dogs) walked on the creek bridge. She also testified that she knew that the creek bridge was slightly wet from the light rain that was falling. Additionally, the photographs of the creek bridge plainly show that it lacks a handrail or any other safety

8.

features. Taken together, these facts show that any danger posed by the creek bridge was readily apparent and Levy could reasonably be expected to discover that danger. We find, therefore, that no genuine issues of material fact remain regarding the open and obvious nature of any danger posed by the creek bridge. Consequently, the Hueners owed no duty to Levy to warn her about the creek bridge, and the trial court did not err in granting summary judgment to the Hueners on Levy's common law negligence claim.

## B. Statutory Negligence

{¶ 19} Levy next claims that the trial court erred by granting summary judgment in the Hueners' favor and against her on the issue of proximate cause in her statutory negligence claims. She contends that the undisputed facts of the case show that the Hueners' negligence relating to the creek bridge was the proximate cause of her fall. The Hueners argue that the trial court correctly decided the issue of proximate cause because Levy does not know what caused her fall and a determination of proximate cause would be based on pure speculation.

{¶ 20} Generally, proximate cause is an issue of fact for the jury to resolve. *Scott v. Kirby*, 6th Dist. Lucas No. L-05-1287, 2006-Ohio-1991, ¶ 33. Proximate cause may be determined as an issue of law, however, "where reasonable minds could not differ with respect to the matter because the circumstances clearly indicate an *obvious* cause and effect relationship * * *." (Emphasis in original.) *Ornella v. Robertson*, 14 Ohio St.2d 144, 151, 237 N.E.2d 140 (1968); *Fowler v. Williams Cty. Commrs.*, 113 Ohio App.3d 760, 776, 682 N.E.2d 20 (6th Dist.1996). Here, we do not see an "obvious" cause and

9.

effect relationship that entitles either side to summary judgment on the issue of proximate cause.

{¶ 21} Levy argues that the Hueners proximately caused her injuries by failing to comply with Toledo Municipal Code 1745.12(d).[2] The code section states, in pertinent part, that "[e]xterior walks and steps shall be provided for all weather access to the dwelling or dwelling unit and constructed so as to provide safety, and reasonable durability." *Id.* It defines a "defective access walk" as one that has "a transverse slope in excess of five-eighths inch per horizontal foot." Toledo Municipal Code 1745.12(d)(4). Levy contends that the Hueners' failure to equip the creek bridge with handrails, traction tape, or other safety devices shows that the creek bridge was not "constructed so as to provide safety." She also contends that the slope of the creek bridge—which her expert measured as 5.5 inches per horizontal foot—is greater than the five-eighths of an inch per horizontal foot permitted by the code. While we agree with the trial court that Levy failed to present evidence to overcome summary judgment with regard to the creek bridge's lack of handrails or safety features, we find that there is a genuine issue of material fact regarding whether the slope of the creek bridge was the proximate cause of Levy's fall.

{¶ 22} Levy relies on *Scott v. Kirby*, 6th Dist. Lucas No. L-05-1287, 2006-Ohio-1991, to support her argument that a genuine issue of material fact exists regarding the

---

[2] Although Levy's expert refers to the creek bridge as an "access ramp" and claims that it violates "numerous" building code requirements for access ramp construction, Levy's arguments focus only on the Hueners' alleged violation of the standards for exterior access walks outlined in Toledo Municipal Code 1745.12.

10.

safety of the creek bridge. She claims that her testimony in this case is "nearly identical to" the plaintiff's testimony in *Scott*. We disagree.

{¶ 23} In *Scott*, the plaintiff broke her ankle when she slipped on a porch because a portion of the porch where she was standing crumbled or broke off. *Scott* at ¶ 7. She specifically testified in her deposition that the deteriorated condition of the porch caused her to slip off of the porch and that she attempted to regain her balance by putting her foot on the top porch step because there were no handrails. *Id.* She also submitted an affidavit in support of her motion for summary judgment in which she averred that the presence of a handrail would have helped prevent her fall and injuries. *Id.* at ¶ 13. The trial court granted summary judgment to the landlord on the issue of proximate cause, but we reversed because we found that the plaintiff's testimony was sufficient to raise a genuine issue of material fact regarding whether the lack of handrails was a proximate cause of her injury. *Id.* at ¶ 33.

{¶ 24} In contrast, Levy testified that she did not know what caused her fall. She also testified that the surface of the creek bridge appeared normal, i.e., she did not see any objects or mud on the creek bridge and the creek bridge did not look slippery. Regarding a handrail, Levy testified only that she "reached out to grab something, but there's no railing there" and "I knew I was in trouble because there was nothing to hold onto." Levy did not testify that the physical condition of the creek bridge's surface caused her to slip or that the presence of a handrail would have done anything to prevent her fall. Testimony that Levy attempted to "grab something" and "was in trouble because there was nothing to hold onto" when she slipped, without testimony that grabbing or holding

11.

onto something might have changed the outcome of her slipping, is insufficient to raise an issue of fact regarding proximate cause. *See Tillman v. Montpelier Church of Christ*, 6th Dist. Williams No. WM-11-013, 2012-Ohio-6252 (reviewing cases where genuine issues of material fact existed regarding proximate cause because the plaintiffs testified that a handrail would have prevented or lessened an injury). Thus, we conclude that Levy did not present sufficient evidence that the creek bridge was unsafe to overcome the Hueners' motion for summary judgment.

{¶ 25} Despite that, we find that the trial court improperly granted summary judgment on the issue of proximate cause because Levy's uncontroverted expert opinion raises issues regarding whether the Hueners' alleged violation of the Toledo Municipal Code was the proximate cause of Levy's fall. In his affidavit, Hayes, Levy's expert, claims that the creek bridge is part of a walkway that provides ingress and egress to the home and that it has a slope of 5.5 inches per horizontal foot, which exceeds the five-eighth of an inch per horizontal foot slope permitted by Toledo Municipal Code 1745.12(d). Levy's testimony that she began to slip as she reached the highest point of the creek bridge indicates that a high slope could have been the reason that her feet slipped while she was crossing the creek bridge. This is sufficient to show that the slope of the creek bridge *might* have been the proximate cause of Levy's fall. Because reasonable minds can differ on this point, summary judgment in favor of either party was inappropriate.

{¶ 26} In sum, because the trial court properly granted summary judgment on Levy's common law negligence claim, but improperly granted summary judgment to the

12.

Hueners on the statutory negligence claims, we find that Levy's first assignment of error is well-taken, in part.  Because a genuine issue of material fact exists regarding proximate cause, we find that Levy's second assignment of error is not well-taken.

## IV.  Conclusion

{¶ 27} The March 20, 2017 judgment of the Lucas County Court of Common Pleas is affirmed as to its granting the Hueners' summary judgment on Levy's common law negligence claim and denying Levy's motion for summary judgment.  The trial court's judgment is reversed and remanded for further proceedings consistent with this opinion on Levy's statutory negligence claims.  The parties are ordered to divide the costs of this appeal equally pursuant to App.R. 24.

Judgment affirmed, in part
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.                                  _____
                                                     JUDGE
Thomas J. Osowik, J.

James D. Jensen, J.                                 _____
CONCUR.                                                    JUDGE

                                                    _____
                                                    JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.